JAMES C. EDWARDS and THOMAS F. JANUARY, Respondents, *v.* MISSISSIPPI VALLEY INSURANCE COMPANY, Appellant.

### February 14, 1876.

1. Where goods are insured on a "memorandum" or open policy, entries of shipments made on the blank book to which the policy is attached are as if made on the sheet on which the policy is written.

2. The express assent of the insurance company to each such indorsement on the policy is not necessary, where such a consent may be implied by the previous dealings of the parties to the contract.

3. Where the policy required that all shipments must be reported to the office of the company, and, by direction of the agent who procured the insurance, the assured had been in the habit of reporting shipments by mailing a statement of the same in an envelope, post-paid, and properly directed to the office of the company, proof of mailing such a letter, so directed and post-paid, will satisfy the condition ; and it is not essential to such effect that the agent should have had authority to waive any requirement of the policy.

4. A sum paid by the assured for salvage, on general average, may properly be included in a verdict against the insurer, under the general averment of loss and damage.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

*Davis, Thoroughman & Warren,* for appellant, cited : Widow Berny Donville *v.* Sun Mutual Ins. Co. of N.

Y., 12 La. An. 259; 1 Pars. on Mar. Ins. 318, *et seq.*;
Edwards *v.* St. Louis Perpetual Ins. Co., 7 Mo. 382; New
York Ins. Co. *v.* Roberts, 4 Duer (N. Y.), 141; E. Carver
Co. *v.* Manufacturing Ins. Co., 6 Gray (Mass.), 214;
Hartshorn *v.* S. & L. D. Ins. Co., 15 Gray (Mass.), —;
Orient Ins. Co. *v.* Wright, 23 How. 401; Bank of United
States *v.* Corcoran, 2 Pet. 121; 3 Kent's Com. (6th ed.)
259, note *d*.

*Martin & Lackland,* for respondents, cited: Pilkington *v.*
National Bank Ins. Co., 55 Mo. 172; Hayward *v.* National
Ins. Co., 52 Mo. 181; 1 Pars. on Mar. Ins., 590; 1 Pars.
on Mar. Ins. 318, 319, 321. See Kennebec Co. *v.* Ins. Co.,
6 Gray (Mass.), 204; Currier *v.* Ins. Co., 53 N. H. 538;
Jones *v.* Ins. Co., 55 Mo. 342.

BAKEWELL, J., delivered the opinion of the court.

This action was upon an open policy of insurance, for
damages to a lot of horses and mules on the steamer "W. R.
Arthur."

The policy was dated at St. Louis, August 5, 1869, deliv-
ered by defendant to Benjamin T. Grant, at St. Louis, and
covered shipments for himself or on account of others. On
October 14, 1869, Grant shipped the horses in question at
St. Louis, on account of Goran & Bro., the owners, on board
the "Arthur," consigned to them at New Orleans. On
October 16, 1869, the vessel struck and began to sink; the
horses and mules were got out greatly injured, and were
subjected to contribution on account of salvage. Plaintiffs
sue as assignees of Goran & Bro. The policy contained the
following provision:

"This policy covers all shipments consigned to or made
by the insured, assured as his own or the property of
others, which he may be instructed to insure by indorse-
ment on bill of lading, by letter, or otherwise, the assured
to report all such shipments to this office on his being
advised thereof; on such sums, on such property, to and
from such places, and aboard such vessels, as shall be speci-

fied by application, and mutually agreed upon and written on said policy."

The petition sets out these facts, and, also, that the shipment was entered in the memorandum book attached to the policy, and Grant immediately notified the defendant of the shipment, in compliance with the terms of the policy, to which defendant assented.

The answer admits the terms of the policy, but puts in issue the fact of the entry in the memorandum book attached, and the fact of notice of such shipment to the company, and, on these grounds, denies insurance. .

. There was a verdict and judgment for plaintiff for $1,536.22; and, a motion for a new trial being overruled, defendant brings the case here by appeal.

On trial it appeared that the entries on the memorandum book attached to, and forming part of, the policy were as stated in the petition. The entry of shipment was made by Grant's clerk, and in precisely the same manner as all previous shipments under the policy; and, immediately on making the entry, the clerk of Grant inclosed a notice of the shipment, declaring the amount of premium and the destination and description of the property, in an envelope, together with a letter to them, the whole directed to defendant, and at once mailed with a postage stamp attached. This method of notification was shown to be the usual way of notifying defendant of shipments under the policy; had been adopted under the instruction of Stark, insurance broker, who procured this insurance for defendant, and had been used in all previous shipments. Plaintiff also showed loss of the property, adjustment, and payment by Grant & Bro. of $488.86 as their general average.

Defendant showed that their office was on Second and Pine streets, St. Louis; that the president and secretary alone occupied the office at the time of the shipment, and alone received the mail matter, and that they had never

received any notice of the shipment, nor did they know of it, or of the application, till after loss.

There was evidence that Stark was an agent of defendant, acting as their solicitor and broker; that he brought the policy to Grant and collected all premiums, and that Grant knew Stark alone in the matter, and dealt wholly with him, and was by him instructed not to send notice of shipment to him (Stark), but direct to defendant's office, which was always done.

The court granted the following instructions, at the instance of plaintiff:

1. "If the jury believe from the evidence that, on October 14, 1869, Benjamin T. Grant shipped the horses and mules mentioned in the petition, on board the steamer 'W. R. Arthur,' for and on account of Goran & Brother, and that said Goran & Brother were the owners thereof; that, at the date of said shipments, said Grant made the entry of said shipment as it appears in the book annexed to the policy, and that such was the uniform method of entering shipments in said policy-book, recognized and approved by both parties to the policy; and if they further believe that, at the date of said shipment, said Grant caused a copy of said entry in the policy-book to be delivered to the United States mail, prepaid and addressed to the defendant, and that such was the uniform method of reporting shipments under the policy, at the office of defendant, recognized and approved by both parties thereto, and pursued in respect to the previous shipments under said policy; and if they further believe that, on the morning of October 16, 1869, the steamer 'W. R. Arthur' was wounded and disabled by drifting on a reef of rocks in the river, and that said horses and mules were damaged thereby, and that said Goran & Brother, assigned to plaintiffs their claim under said policy, then they should find for plaintiffs."

2. "If the jury find for the plaintiffs, they should assess the actual damage suffered upon the property shipped, by

reason of the accident, including the amount contributed to general average, and deduct the premium in favor of defendant, and give interest at the rate of 6 per cent. from the date of this suit.''

At the instance of defendant, the court gave the following instructions :

1. '' The court instructs the jury that notice to W. H. Stark was not notice to the company of the shipment and entries mentioned in the evidence, even if the jury shall believe from the evidence that W. H. Stark was the agent of the company for procuring insurance, and for that purpose alone.''

2. '' The court instructs the jury that, if they find for the plaintiff, they can only find such damages as were actually sustained by the actual depreciation in the value of the mules and horses, and the actual loss of the horses and mules that were lost to the owner ; and that, in estimating such damages, they cannot take into consideration the loss of time and other expenses incurred by said owners ; but they can only consider the actual value of the horses and mules lost, and the actual injury to the others occasioned by the accident. This instruction is to be considered together with plaintiff's instruction No. 2.''

The defendant asked several instructions which were refused. These were to the effect that mailing notice of the shipments to defendants was not a sufficient compliance with the policy unless the notice was received and assented to by the company ; that, if Stark was the agent of the company only for procuring insurance, he had no authority to direct notice to be put in the mail, or to waive any requirement of the policy ; and to the further effect that certain facts must be found as conditions precedent to recovery. These are set out in separate instructions, and are as follows :

1. That Stark agreed with Grant for the insurance of the property mentioned to be covered by Grant's policy.

2. That, on making the shipments and entries in evidence, the sums, voyage, and vessels were specified by application, mutually agreed on by Grant and the company, and written on the policy.

3. That Grant, on making the shipments and entries, notified defendant of the same, and that defendant assented.

To the refusal of these instructions, and the granting of those given plaintiffs, defendant duly excepted.

It is apparent, from what has been said, that the appellant insists :

1. That the shipment should have been indorsed on the policy itself.

2. That both parties must mutually agree to such indorsement.

3. That notification of the shipment had to be made to the company—must have been actually received by them— and that the company must expressly assent to such notification.

1. As to the first requisite, it appears from the evidence that it was sufficiently complied with.   The ruled memorandum book on which the shipments were entered was attached to the policy and made part of it.   If appellant contends, as he seems to do, that these indorsements must have been made on the identical sheet containing the written and printed policy, the seal of the corporation, and the signature of its officers, he is in error.

This is not required in regard to these memoranda on open policies.   They are generally, as in this case, attached for convenience to a blank-book conveniently ruled with proper blanks for the entries ; and entries on the book are held to be as if made on the sheet on which the policy is written.

2. It was a condition precedent to recovery in this case that there should be an implied assent on the part of the company to the indorsement made on the policy by Grant. This, we think, was sufficiently shown, and more than this

was not necessary. An expressed assent of the company was not requisite, because it had been waived by their course of conduct in regard to all previous shipments made by Grant on the same policy. He gave them notice on this occasion precisely as he had done on all previous occasions of shipments, and they assented by silence, precisely as they had always theretofore done. The policy indicated no particular form of assent; but had it done so, even written indorsement of assent would have been waived by a continuous neglect to enforce it on the part of the company. The fact appeared in this case, and the law is settled by repeated decisions in this State. *Pelkington* v. *Ins. Co.,* 55 Mo. 172; *Hayward* v. *Ins. Co.*, 52 Mo. 181.

3. It appeared in evidence that notice of the shipment was, in this instance, given to the company, as it had been on all previous occasions, by mailing to the company a written duplicate of the indorsement on the policy. This mode of notice was adopted by Grant at the direction of Stark, who acted as agent of the company in the matter of procuring this and other insurance. No objection was ever made to it. The policy required that Grant should report all shipments to the office of the company, and we think, under the circumstances, the mailing of a properly directed letter, postpaid, was a compliance with this condition. When a letter is put in the mail, properly stamped and addressed, that is evidence strongly tending to show that the letter was received. The jury must pass upon it. There is no conclusive presumption, not even a legal presumption, that it reaches its destination [1 Greenl. on Ev. 43, sec. 40; *Russell* v. *Buckley*, 4 R. I. 525; 3 Watts (Penn.), 324; *Com.* v. *Jeffries*, 7 Allen (Mass.), 563]; and the evidence of the president and secretary that they received the mail of the company and got no such letter was for the consideration of the jury on the other side. But it was not necessary in this case to show actual receipt of the letter, because this manner of delivering these notices was sanctioned by the custom of the com-

pany and by the direction of Stark to Grant to adopt it. The safe carriage of the letter, under these circumstances, was at their risk; and if, in fact, neither the president nor the secretary of the company ever got it, it was not the fault of Grant, if he properly addressed, paid, and mailed the letter, as the jury find he did. From what has been said, it appears that we think the law of the case not incorrectly declared by the court below, and that no error was committed in giving or refusing instructions.

It is, however, especially insisted that the court erred in refusing the following instruction asked by defendant:

"The jury are instructed that, if they believe from the evidence that W. H. Stark was only the agent of the company for the purpose of procuring insurances, and for that purpose alone, then said Stark had no authority to direct that notice of shipments and entries should be put in the letter-box, or to waive any condition or requirement of the policy."

But this instruction was properly refused, because, although Stark may have had, and, as far as appears, did have, no authority whatever to waive any condition or requirement of the policy, that not being within the scope of his agency, he might very well, from his knowledge of the established and proved custom of the company, direct Grant to serve these notices by mail, as this was no violation of any condition of the policy, which says nothing whatever as to how there notices shall be delivered; and the fact of such notification from Stark, an agent of the defendant, was a warrant to Grant to send these notices by the mail as he did, and his act was ratified by their subsequent acquiescence in such a mode of notice.

Appellant further objects that the court below erred in admitting, against the objection of defendant, evidence of payment and loss by the insured of $458.86, general average, as to which he says no claim was made in the petition. We should not send the case back for a new trial on this

account alone. It may well be said that the horses and mules were depreciated in value by this claim of salvage, as well as by physical injury. It came out of them—out of their value ; the general averment of loss and damage will cover it, we think. At any rate, it is good enough after verdict.

For these reasons the judgment of the Circuit Court is affirmed. The other judges concur.